UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA )<br><br>v.                                )     Case No. 12-cr-10201-DJC<br><br>MODESTO CRUZ,                     )<br><br>         Defendant.                )  | |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                     **August 2, 2022**

## I.     Introduction

Petitioner Modesto Cruz ("Cruz" or "Petitioner") has filed a petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2255 (the "Petition"). D. 113. The government opposes the Petition. D. 122. For the reasons discussed below, the Court DENIES the Petition.

## II.    Standard of Review

Under § 2255, an incarcerated individual may move to vacate their sentence if it "(1) was imposed in violation of the Constitution, or (2) was imposed by a court that lacked jurisdiction, or (3) exceeded the statutory maximum, or (4) was otherwise subject to collateral attack." David v. United States, 134 F.3d 470, 474 (1st Cir. 1998) (citing Hill v. United States, 368 U.S. 424, 426–27 (1962)). Such motions are also subject to a one-year statute of limitations that runs from the latest of four possible dates:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

1

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). The petitioner shoulders the burden "to make out a case for section 2255 relief." David, 134 F.3d at 474 (citing Mack v. United States, 635 F.2d 20, 26–27 (1st Cir. 1980)).

### III. Factual and Procedural Background

On March 27, 2013, Cruz was charged in a superseding information with one count of conspiracy to possess with intent to distribute and to distribute 100 grams or more of heroin, in violation of 21 U.S.C. § 846; four counts of distribution of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B); and one count of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). D. 73. He pleaded guilty to these counts pursuant to a plea agreement with the government. D. 74; D. 76.

Under the agreement, among other things, Cruz agreed to plead guilty to all six counts and the government, in light of Cruz's concessions, agreed not to file an Information pursuant to 21 U.S.C. § 851. D. 76 at 1–2. The parties also agreed that Cruz was "a career offender, within the meaning of USSG §4B1.1(b)(a), and, accordingly, his base offense level was 34 and that his Criminal History Category ("CHC") was VI. Id. at 3. As a result, the guideline sentencing range, based upon a total offense level of 31 (reflecting acceptance of responsibility) and CHC of VI was 188–235 months and the government recommended a sentence of 188 months. D. 80 at 1.

Significantly for our purposes here, Cruz also agreed in his plea agreement to "waive[] any right he has to challenge his conviction on direct appeal or in a collateral challenge." D. 76 at 7. Further, the agreement explained that "[i]n exchange for the U.S. Attorney's agreement not to file

an Information pursuant to 21 U.S.C. § 851, Defendant agrees that he will not file a direct appeal nor collaterally challenge his sentence (including any orders relating to supervised release, fines, forfeiture, and restitution)." Id. The only exception to this appellate waiver was that Cruz "reserves the right to claim that [his] lawyer was ineffective in connection with the negotiation of this plea agreement or the entry of the guilty plea." Id.

At the March 27, 2013 plea hearing, in response to the Court's questions, Cruz indicated that he entered into a plea agreement with the government, he signed the agreement, he had the opportunity to read and discuss the agreement with his attorney, the agreement included all the terms to which he agreed, and he understood the terms of the agreement. D. 119 at 10–11. During the plea colloquy, the Court asked Cruz to turn to the specific page and section of the plea agreement discussing the appellate waiver to ensure that he understood the nature of the rights he was waiving. Id. at 16. Regarding this waiver, the Court specifically asked him whether he understood that he was "waiving [his] right to challenge or appeal [your] conviction." Id. at 16. Cruz replied "yes." Id. at 17. The Court also asked him if he understood that he was "agree[ing] not to appeal or collaterally challenge any sentence that [the Court] might impose." Id. Again, Cruz stated that he understood. Id. In accepting the Cruz's plea, the Court found him "fully competent and capable of entering an informed plea" and "aware of the nature of all of the charges and the consequences of [his] plea," and that his guilty plea was "knowing and voluntary." Id. at 27.

At the July 10, 2013 sentencing, after hearing the parties' sentencing recommendations, the Court sentenced Cruz to 188 months' incarceration, four years of supervised release and $600 special assessment. D. 82; D. 84. At sentencing, the Court asked Cruz if he recalled the waiver provision in his plea agreement:

3

> [THE COURT:] Mr. Cruz, you may recall, when you pled guilty, I asked you about certain appellate rights that you gave up in your plea agreement. Do you remember that discussion?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And I note in looking at your plea agreement again that you'd waived any right to challenge your conviction on direct appeal or collateral challenge, and that you had also given up certain of your appellate rights in regards to your sentence; but to the extent that any appellate rights survive your plea agreement, you can appeal your conviction or your sentence. If you're unable to pay the costs of any appeal, you may ask permission to have those costs waived and appeal without paying. You must file any notice of appeal within 14 days after the entry of judgment. If you request, the Clerk will immediately prepare and file a notice of appeal on your behalf. Do you understand?
>
> THE DEFENDANT: Yes.

D. 103 at 14. Cruz did not appeal his conviction or sentence.

Over six years after his sentencing, on August 19, 2019, Cruz filed an application with the First Circuit, requesting leave to file a second or successive *habeas* petition pursuant to § 2255(h). See D. 112. As Cruz had not filed any prior motion under § 2255, the First Circuit denied the motion "as unnecessary" on September 17, 2019. D. 112. On January 13, 2020, Cruz filed this Petition in this Court, attaching his previously-filed application to the First Circuit. D. 113.

**IV.   Discussion**

Cruz seeks *habeas* relief on the grounds that the Supreme Court's decision in <u>Burrage v. United States</u>, 571 U.S. 204 (2014), renders him factually innocent of his convictions pursuant to 21 U.S.C. §§ 841, 846; that 21 U.S.C. § 846 is an unconstitutional bill of attainder; and that his plea agreement is ambiguous, so he did not actually waive his right to appeal or collaterally attack his conviction or sentence. D. 113-1 at 9–20.

    **A.   <u>Cruz Waived This Collateral Attack to His Conviction and Sentence.</u>**

Before proceeding to the merits of Cruz's claims, the Court must first determine whether

Cruz's waiver of his right to bring a collateral challenge is enforceable. Such a waiver is enforceable if (1) "the written waiver . . . comprise[s] a clear statement describing the waiver and specifying its scope"; (2) "the record . . . show[s] that the judge's interrogation suffice[d] to ensure that the defendant freely and intelligently agreed to waive [his or] her right to appeal"; and (3) even if the first two prongs are satisfied, the denial of a "right to appeal would [not] work a miscarriage of justice." United States v. Morillo, 910 F.3d 1, 2 (1st Cir. 2018) (third and fourth alterations in original) (quoting United States v. Teeter, 257 F.3d 14, 24–25 (1st Cir. 2001)) (internal quotation marks omitted); see Fed. R. Crim. P. 11(b)(1)(N) (requiring that before a court accepts a plea, the district court inform, and determine that the defendant understands, any terms in the plea agreement that waive the right to appeal or collaterally attack the sentence).

Applying this rubric, Cruz's waiver of his right to appeal or collaterally attack his conviction or sentence, including by a § 2255 petition, is plainly enforceable. As an initial matter, the plea agreement states explicitly that Cruz waives any right he has to challenge his conviction or sentence on direct appeal or in a collateral challenge. D. 76 at 7. Despite this clear language, Cruz argues that paragraphs (a) and (e) of the waiver contradict each other, rendering his plea agreement ambiguous as to the scope of his waiver. D. 113-1 at 19. The Court does not agree. Paragraph (a) explains that Cruz conferred with his attorney and understands the scope of his rights to appeal and collaterally challenge his conviction or sentence. D. 76 at 6–7. Paragraph (e) explains that "notwithstanding any previous subparagraphs" Cruz retains the right to claim ineffective assistance of counsel "in connection with the negotiation of this plea agreement or entry of the guilty plea." Id. at 7. When viewed in its totality, the waiver, its scope, and application are all clear. Paragraph (a) states which rights Cruz is entitled to, paragraphs (b) and (c) waives those rights, and paragraph (e) excepts from the waiver only ineffective assistance of counsel claims

relating to the negotiation of the plea agreement and entry of his guilty plea, which Cruz does not raise here. Id. at 6–7.

Further, to ensure Cruz understood the waiver, the Court queried him about it during the plea hearing. The Court turned Cruz's attention to the specific page and section in the plea agreement, detailing his waiver. D. 119 at 16. The Court specifically questioned Cruz whether he understood he was agreeing to waive his right to appeal or collaterally attack his conviction and his sentence and he answered affirmatively. Id. at 16-17. At sentencing, the Court returned to this topic, if only as a prelude to the standard recitation of appellate rights. D. 103 at 14. Accordingly, the Court invoked the colloquy at the Rule 11 hearing, in which the Court had asked him about waiver of certain appellate rights. Id. When Cruz responded affirmatively, the Court then reminded him that he had "waived any right to challenge [his] conviction on direct appeal or collateral challenge," and that he had given up certain appellate rights as to his sentence but "to the extent" any such rights remain, the timeframe for filing any appeal was fourteen days after the entry of judgment. Id. Cruz indicated that he understood. Id.

Lastly, enforcement of this waiver would not amount to a miscarriage of justice. When a plea agreement confers "significant benefits" on a defendant, the First Circuit has explained that enforcing an appellate or collateral challenge waiver is unlikely to create a miscarriage of justice. Sotirion v. United States, 617 F.3d 27, 38 (1st Cir. 2010). In the case at bar, Cruz reaped significant benefits from the plea agreement. Most notably, the government agreed to forgo filing a 21 U.S.C. § 851 information, the effect of which was to lower Cruz's guideline sentencing range from 262–327 months to 188–235 months (and the applicable minimum mandatory sentence). D. 80 at 2; D. 122 at 6-7. Under the agreement, the government also agreed to recommend a sentence "at the low end of the Sentencing Guideline range." D. 76 at 5. In light of these concessions on the part

of the government, the Court does not conclude enforcement of Cruz's waiver would amount to a miscarriage of justice.

Nevertheless, Cruz urges the Court to look to the Fourth Circuit's decision in Whiteside v. United States, 748 F.3d 541 (4th Cir. 2014), rev'd en banc on other grounds, 775 F.3d 180 (4th Cir. 2014), which he contends supports his argument. There, the defendant's plea agreement excepted from his waiver claims involving ineffective assistance of counsel, prosecutorial misconduct, and the career offender enhancement. Whiteside, 748 F.3d at 545. In the very next paragraph, however, the agreement stated that the defendant could only challenge his sentence on ineffective assistance or prosecutorial misconduct grounds. Id. The panel of the Fourth Circuit believed the agreement contradicted itself on this issue, "leaving it impossible to say exactly which rights Whiteside waived" and finding "that Whiteside did not waive his right to challenge the career offender enhancement in a collateral proceeding." Id. at 545–46. Here, there is no contradiction regarding the provisions of the waiver. The language makes clear that Cruz only retained appellate rights and rights to collateral challenge as to ineffective assistance of counsel relating to the negotiation of his plea agreement and entry of his guilty plea. He otherwise waived his right for other challenges to his conviction and sentence and acknowledged his waiver of same at the Rule 11 hearing. Further, there is no language in Cruz's plea agreement that would exempt from such waiver the claims he wishes to raise now—namely, that Burrage renders him factually innocent of his convictions and that 21 U.S.C. § 846 is an unconstitutional bill of attainder. As such, Cruz's waiver was knowingly and voluntarily made and remains enforceable.

### B.     Cruz's Petition Is Also Untimely

Cruz's Petition also remains untimely and therefore barred. Section 2255(f) requires petitioners to bring their actions within one year from the latest of four possible dates—only three

7

of which are relevant here and none of which prove availing.

First, under § 2255(f)(1), petitioners must file their suit within one year of the date of their conviction becoming final. 28 U.S.C. § 2255(f)(1). Here, Cruz did not file an appeal, so his conviction became final when the time for filing an appeal expired. Fed. R. App. P. 4(b)(1)(A). The judgment was entered on July 17, 2013, D. 85, but he did not file the Petition until January 13, 2020, D. 113, well after the one-year limitation expired.

Second, Cruz makes a passing reference in the Petition to § 2255(f)(2), which allows petitioners to file their motions within one year of "the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed." 28 U.S.C. § 2255(f)(2); D. 113 at 10. Nevertheless, he does not address this issue in his memorandum to this Court, rendering the issue waived. The First Circuit has repeatedly held that "issues adverted to in a perfunctory fashion, unaccompanied by some effort at developed argumentation, are deemed waived." Watson v. Trans Union LLC, 223 F. App'x 5, 6 (1st Cir. 2007) (quoting United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990)) (internal quotation marks omitted). Even though *pro se* litigants are afforded a wider latitude than counseled litigants, Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997), they are still subjected to this requirement, United States v. Nishnianidze, 342 F.3d 6, 18 (1st Cir. 2003). A barebones assertion that a governmental impediment prohibited Cruz from filing the instant Petition does not satisfy this standard.

Finally, Cruz relies upon § 2255(f)(3), which allows petitioners to file their motions within one year of "the date on which the right asserted was initially recognized by the Supreme Court." 28 U.S.C. § 2255(f)(3); D. 113 at 1. In this regard, Cruz relies upon the Supreme Court's decision in Burrage, 571 U.S. at 204, which was decided on January 27, 2014. Even assuming that Cruz's

application with the First Circuit could be construed as his § 2255 petition, that application was not filed until August 19, 2019, some five years after Burrage. Whether you consider the date of his application to the First Circuit or the January 13, 2020 filing of the Petition here, both dates are well past the date on which Burrage was decided.[1] More substantively, the supposed right announced in Burrage has no bearing on Cruz's case. In Burrage, the Supreme Court interpreted the statutory language of 21 U.S.C. § 841, which imposes a 20-year mandatory minimum sentence on a defendant who unlawfully distributes a Schedule I or II drug, when "death or serious bodily injury results from the use of such substance." 21 U.S.C. § 841(a)(1), (b)(1)(A)–(C); Burrage, 571 U.S. at 206. The Court held that "a defendant cannot be [held] liable under the penalty enhancement provision . . . unless such use [of the drug distributed by the defendant] is a but-for cause of the death or injury." Burrage, 571 U.S. at 218–19. While Cruz did indeed plead guilty to a heroin distribution conspiracy charge in violation of § 846 and four counts of distribution of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), he did not plead to nor was sentenced under this particular penalty enhancement provision. Cruz should be well aware of this fact because, at the plea hearing, the government explained that the maximum penalty for the conspiracy count (involving 100 grams or more of heroin) was forty years' imprisonment and a mandatory minimum term of five years and the maximum penalty for the distribution counts was twenty years' imprisonment (with no minimum mandatory), D. 119 at 12, and Cruz indicated that he understood these penalties when the Court inquired. Accordingly, Burrage has no application here and the Petition is untimely.

---

[1] Cruz also relies upon the Sixth Circuit's August 13, 2018 decision in Harrington v. Ormond, 900 F.3d 246 (6th Cir. 2018), which relied upon Burrage. However, § 2255(f)(3) (referring to the "date on which the right asserted was initially recognized by the Supreme Court") does not encompass decisions by the circuit courts.

### C. Even on the Merits, *Habeas* Relief Is Not Warranted

Even if Cruz had not waived his right to file the Petition, and even if the Petition had not been untimely, the Petition would still fail on the merits. As discussed above, Burrage does not aid Cruz as to the timing of the Petition, but also does not aid him on the merits for the same reasons. Cruz's contention that 21 U.S.C. § 846 is an unconstitutional bill of attainder also fails. D. 113-1 at 13–17. "A bill of attainder is a law that inflicts punishment upon identifiable members of a class without providing a judicial trial." Charles v. Rice, 28 F.3d 1312, 1318 (1st Cir. 1994) (citing Nixon v. Adm'r of Gen. Servs., 433 U.S. 425, 468–69 (1977)). Cruz does not adequately explain how § 846 constitutes a bill of attainder, legislatively determining his guilt and inflicting punishment without a judicial trial. In Cruz's view, § 846 satisfies the criteria for a bill of attainder because it "specifies the affected persons are those who are convicted of conspiracy to commit a crime," imposes incarceration as punishment, and does not involve a trial in the sense that "all the government needs to show is that there was an agreement to commit an offense," not that the defendant acted in furtherance of the conspiracy. D. 113-1 at 15–16. Cruz's reliance on United States v. Brown, 381 U.S. 437 (1965) misses the mark. In Brown, the Supreme Court explained that Congress must pass "rules of general applicability" and "cannot specify the people upon whom the sanction it prescribes is to be levied." Brown, 381 U.S. at 461. "Under our Constitution, Congress possesses full legislative authority, but the task of adjudication must be left to other tribunals." Id. Unlike the statute at issue in Brown, criminalizing service as an officer or employee of a labor union if also a member of the Communist Party, § 846 is a generally applicable statute decreeing that any individual who conspires to commit a crime will face the same penalty for the crime which was the object of the conspiracy. Id. at 438; 21 U.S.C. § 846. It does not target any specific person or group, as have other laws struck down by the Supreme Court as bills of attainder.

10

See, e.g., Brown, 381 U.S. 437 (targeting Communist Party members); United States v. Lovett, 328 U.S. 303, 315 (1946) (targeting "subversives").  Further, it was the judicial branch, not the legislative branch, that adjudicated Cruz's guilt, after he pled guilty to the crimes and received all the protections accorded to the criminally accused under our Constitution.  See United States v. Castaing-Sosa, 338 F. App'x 852, 854 (11th Cir. 2009) (holding that the statutory mandatory minimum sentence provision in 21 U.S.C. § 841 applied to a defendant convicted of a heroin conspiracy under § 846 was not an unconstitutional bill of attainder).

For all of these reasons, the Petition fails.

### V.     Conclusion and Certificate of Appealability

For the foregoing reasons, the Court DENIES the Petition, D. 113.  Cruz may receive a certificate of appealability only if he "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A certificate of appealability is appropriate when "reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong."  Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)) (internal quotation marks omitted).  Based upon the analysis of the record and the applicable law in this Memorandum and Order, the Court does not, at this juncture, conclude that reasonable jurists would debate its conclusions.  The Court, therefore, is not inclined to issue a certificate of appealability, but will give Petitioner until August 23, 2022 to file a memorandum, if he seeks to address the issue of whether a certificate of appealability is warranted as to the Petition.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge